IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

SOUTHEAST ACCESS, LLC,

    Plaintiff,

v.

SCAFFOLD INDUSTRY INSURANCE
COMPANY RISK RETENTION GROUP,
INC., d./b/a SCAFFOLD INDUSTRY
INSURANCE COMPANY (RRG), INC.,

    Defendant.

CIVIL ACTION FILE
NO. 4:09-CV-0183-HLM

## ORDER

This case involves an alleged breach of an insurance contract. The case is before the Court on Defendant's Motion for Summary Judgment [33], on Plaintiff's Motion for Summary Judgment [35], and on Plaintiff's Motion to Strike [50].

## I. Motion to Strike

On August 18, 2010, Plaintiff filed its Motion to Strike. (Docket Entry No. 50.) The briefing process for that Motion is complete, and the Court therefore concludes that the Motion is ripe for resolution by the Court.

Plaintiff has moved to strike paragraphs five and six of the Declaration of Judith Ray. Those paragraphs provide:

### 6.

The 2006 and 2007 CGL policies issued by SIIC to Southeast contain substantially the same terms and provisions as the 2008 policy at issue in this litigation.

### 7.

All policies issued by SIIC to Southeast contain the classification limitation endorsement.

(Decl. of Judith Ray ¶¶ 5-6.) Plaintiff contends that those statements fail to comply with Federal Rule of Civil Procedure 56(e)(1), because those statements reference certain documents, but fail to attach or authenticate the documents. Plaintiff further asserts that the statements lack evidentiary foundation and are premised on hearsay.

Federal Rule of Civil Procedure 56(e)(1) provides:

> A supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated. If a paper or part of a paper is referred to in an affidavit, a sworn or certified copy must be attached to or served with the affidavit. The court may permit an affidavit to be supplemented or opposed by depositions, answers to interrogatories, or additional affidavits.

Fed. R. Civ. P. 56(e)(1). Here, however, Ms. Ray filed a declaration, not an affidavit. Thus, it is questionable whether

3

Rule 56(e)(1) even applies. In any event, Defendant has produced the Supplemental Declaration of Judith Ray, which attaches the 2006 and 2007 policies referenced in paragraphs 5 and 6, and any violation of Rule 56(e)(1) consequently has been cured. The Court therefore will not strike those paragraphs based on this argument.

With respect to Plaintiff's hearsay argument, the Court may consider hearsay in connection with a summary judgment motion if a party can reduce the hearsay to admissible form at trial. Here, Defendant can reduce the alleged hearsay contained in Ms. Ray's declaration to admissible form at trial by authenticating the 2006 and 2007 insurance policies as business records. The Court

4

therefore may consider the alleged hearsay contained in paragraphs 5 and 6 of Ms. Ray's declaration.

In its reply brief, Plaintiff argues that Defendant failed to produce copies of the 2006 and 2007 policies in response to Plaintiff's discovery requests, and that Defendant's failure to produce those documents was not substantially justified. Plaintiff therefore contends that the Court should exclude those documents under Federal Rule of Civil Procedure 37(c)(1). (Reply Br. Supp. Pl.'s Mot. Strike at 4-7.) Plaintiff, however, raised that argument for the first time in its reply brief, and thereby waived it.[1] <u>See</u>

---

[1]Although Plaintiff's initial brief in support of its Motion to Strike states, in passing, that Defendant did not produce the 2006 and 2007 policies during discovery, Plaintiff's initial brief only requests the Court to strike the challenged paragraphs of Ms. Ray's declaration under Rule 56(e). (Pl.'s Br. Supp. Mot. Strike at 2.)

AO 72A

<u>United States v. Nealy</u>, 232 F.3d 825, 830-31 (11th Cir. 2000) (concluding that defendant abandoned issue by failing to raise it in initial brief; collecting cases).

In sum, the Court declines to strike the challenged paragraphs of Ms. Ray's declaration. The Court therefore denies the Motion to Strike and overrules any objection by Plaintiff to those paragraphs.

## II. Motions for Summary Judgment

### A. Background

Keeping in mind that when deciding a motion for summary judgment, the Court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion, the Court provides the following statement of facts. See <u>Optimum Techs., Inc. v. Henkel</u>

AO 72A

Consumer Adhesives, Inc., 496 F.3d 1231, 1241 (11th Cir. 2007) (observing that, in connection with summary judgment, court must review all facts and inferences in light most favorable to non-moving party). This statement does not represent actual findings of fact. In re Celotex Corp., 487 F.3d 1320, 1328 (11th Cir. 2007). Instead, the Court has provided the statement simply to place the Court's legal analysis in the context of this particular case or controversy.

### 1. Factual Background

#### a. Statements of Material Facts

Defendant filed a Statement of Material Facts as to Which There Is No Genuine Issue to Be Tried ("DSMF") in support of its Motion, as required by Local Rule 56.1B(1). (Docket Entry No. 33-3.) Plaintiff filed a response to DSMF

("PRDSMF"), as required by Local Rule 56.1B(2)a. (Docket Entry No. 46.)

Plaintiff also filed its own Statement of Undisputed Facts ("PSMF") in support of its Motion for Partial Summary Judgment. (Docket Entry No. 35-11.) Defendant filed a response to PSMF ("DRPSMF"). (Docket Entry No. 43.)

The Court has included all the material statements contained in DSMF or PSMF that the opposing party has admitted in this Background section. Where the parties disagree as to a particular statement in DSMF or PSMF, the Court has reviewed the record to arrive at the statements contained in this section.

AO 72A

### b. The Parties

Plaintiff is a Georgia corporation with its principal place of business in Acworth, Georgia. (Am. Notice of Removal ¶ 4.) Plaintiff provides erection services and materials for commercial construction projects in the southeastern United States. (Aff. of Scott West ¶ 6.)

Defendant is a District of Columbia corporation, with its principal place of business in Dallas, Texas. (Am. Notice of Removal ¶ 4.)

### c. Events Giving Rise to this Lawsuit

Plaintiff is the named insured under a commercial general liability ("CGL") policy issued by Defendant, Policy No. SICC2021, effective during the period from November 21, 2008, through November 21, 2009 (the "Policy").

AO 72A

(DSMF ¶ 1; PRDSMF ¶ 1.) The Policy contains a Classification Limitation Endorsement that states: "It is hereby understood and agreed that coverage as provided by this policy applies only to those operations as described under the liability schedule." (DSMF ¶ 3; PRDSMF ¶ 3.) The Policy also provides, in relevant part:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

(West Aff. Ex. 5 at 38.) The Policy further provides:

## 6. Representations

### a. When You Accept This Policy

By accepting this policy, you agree:

(1) The statements in the Declarations are accurate and complete;

(2) Those statements are based upon representations you made to us; and

(3) We have issued this policy in reliance upon your representations.

**b.** **Unintentional Failure to Disclose Hazards**

If unintentionally you should fail to disclose all hazards relating to the conduct of your business that exist at the inception date of Coverage Part, we shall not deny coverage under this Coverage Part because of such failure.

(Id. at 46.)

On September 14, 2008, Plaintiff entered into a Master Lease Agreement (the "Agreement") with Williams Erection Company ("Williams") to provide materials, equipment, and

11

services for Williams at the Atlanta Botanical Garden bridge construction project (the "Project"), upon which an elevated concrete walkway was to be poured. (DSMF ¶ 4; PRDSMF ¶ 4.) When Plaintiff signed the Agreement, it believed it would provide some type of scaffolding for the Project. (DSMF ¶ 5; PRDSMF ¶ 5.) Plaintiff's work for the Project ultimately included scaffolding and shoring work. (DSMF ¶ 5; PRDSMF ¶ 5.)

On or about September 18, 2008, Defendant sent Plaintiff's president, Scott West, a blank application ("Application") for commercial general liability ("CGL") coverage via electronic mail. (PSMF ¶ 1; DRPSMF ¶ 1.) Defendant did not provide additional instructions or definitions with the Application, other than those contained

12

within the Application. (PSMF ¶ 3; DRPSMF ¶ 3 (admitting that Defendant provided no additional instructions or definitions with Application, and contending Plaintiff did not need those).) The Application is titled "Scaffold Industry Insurance Company (RRG) Inc. General Liability Application." (PSMF ¶ 4; DRPSMF ¶ 4.)

Mr. West contends that the Application was for general liability insurance covering all work performed by Plaintiff during the relevant Policy period. (West Aff. ¶ 8.) Mr. West also contends that the Application does not contain the terms "Classification Limitation Endorsement," "classification," or "Liability Schedule," and does not contain warnings stating that an applicant will receive coverage only

for operations listed in Section 15 of the Application. (Id. ¶ 11.)

On October 23, 2008, Mr. West completed the Application on behalf of Plaintiff. (DSMF ¶ 6; PRDSMF ¶ 6.) Mr. West contends that he was not familiar with the exact Application before completing it. (Second Aff. of Scott West ¶ 5.)

Plaintiff did not list scaffolding on the Application. (DSMF ¶ 7; PRDSMF ¶ 7 (admitting Plaintiff did not list scaffolding on Application).) Plaintiff listed the following operations on the Application: (1) 52411- Sales/Distribution-Temporary Swing Stages, Hoist, Suspended Platforms; (2) 36620-Sales/Distribution-Mast Climbing Equipment; (3) Misc-Sales/Distribution-Fall Protection Equipment; (4)

14

73914-Pure Rental-Temporary Swing Stages, Hoists, Suspended Platforms; and (5) 90014-Combined rental, Erection/Dismantling-Temporary Swing Stages. (Aff. of Scott West Ex. 1.)

Plaintiff did not include scaffolding, shoring, or forming as one of its business operations under any section of the Application. (DSMF ¶ 9; PRDSMF ¶ 9.) Mr. West testified that Plaintiff only included "an estimate of [the] major revenue items we were doing" when completing the Application. (DSMF ¶ 9; PRDSMF ¶ 9.) Mr. West contends that he "was unaware of and not informed about a requirement to list any and all operations" performed by Plaintiff. (West Aff. ¶ 13.) Mr. West contends that, when he completed the Application, scaffolding, shoring, and forming

15

were not major revenue lines for Plaintiff. (Second West Aff. ¶ 6.) Mr. West, however, acknowledged that the Application does not differentiate between major and minor product lines. (DSMF ¶ 10; PRDSMF ¶ 10 (admitting that Application does not differentiate between major and minor product lines, but contending this statement is immaterial).)

In any event, Mr. West contends that he did not intentionally fail to disclose all operations, and that he believed that the manner in which he completed the Application would secure insurance coverage for all operations that Plaintiff might perform during the Policy Period. (West Aff. ¶ 14.) Mr. West asserts that he did not fail to disclose operations in an attempt to avoid paying

16

premiums for those operations, and that, if he had known Plaintiff would receive coverage only for the operations listed on the Application, he would have listed all operations that Plaintiff potentially could perform during that period. (Id. ¶¶ 15-16.) Mr. West requested that Defendant exclude all revenues associated with trucking, sales taxes, and in-house labor, and contends that those were the only items he believed would be excluded from coverage under the Policy. (Id. ¶ 17.)

On October 23, 2008, Plaintiff transmitted a completed Application to Defendant via facsimile. (PSMF ¶ 5; DRPSMF ¶ 5.)

On or about November 3, 2008, Plaintiff received an insurance proposal (the "Proposal") from Defendant via

electronic mail. (DSMF ¶ 11; PRDSMF ¶ 11; PSMF ¶ 9; DRPSMF ¶ 9.) The Proposal contains the following statement: "**Classification Limitation Endorsement:** Limits coverage to specific classifications as indicated on the completed SIIC application." (West Aff. Ex. 3 at 2.) The Proposal listed only the operations that Plaintiff listed on the Application, in an untitled table. (West Aff. Ex. 3 at 4.) Defendant provided no additional instructions or definitions with the Proposal, other than those contained in the Proposal itself. (PSMF ¶ 11; DRPSMF ¶ 11 (admitting that Defendant provided no additional instructions or definitions, but contending that Plaintiff had opportunity to request those).)

18

Plaintiff received the Proposal before accepting the Policy. (DSMF ¶ 12; PRDSMF ¶ 12.) Mr. West accepted the Proposal by submitting a signed letter of understanding and the required down payment to Defendant. (West Aff. ¶ 20.)

On or about November 24, 2008, Defendant sent a copy of a temporary insurance contract (the "Binder") to Mr. West via electronic mail. (PSMF ¶ 12; DRPSMF ¶ 12.) The Binder contains the following statement: "**Classification Limitation Endorsement:** Limits coverage to specific classifications as indicated on the completed SIIC application." (West Aff. Ex. 4 at 1.) Defendant provided no additional instructions or definitions with the Binder, other than those contained within the Binder itself. (PSMF ¶ 14;

DRPSMF ¶ 14 (admitting Defendant provided no additional instructions or definitions, but contending that Plaintiff could have requested those).)

On December 19, 2008, Plaintiff received a telephone call notifying it that the bridge at the Project had collapsed (the "Occurrence"). (DSMF ¶ 13; PRDSMF ¶ 13.) After receiving notification of the Occurrence, Plaintiff's president traveled to the Project site. (DSMF ¶ 13; PRDSMF ¶ 13.)

On that same day, Plaintiff notified Defendant, via telephone call, of the Occurrence. (PSMF ¶ 17; DRPSMF ¶ 17.) On December 21, 2008, Plaintiff submitted a written claim form to Defendant, seeking coverage for the Occurrence. (DSMF ¶ 14; PRDSMF ¶ 14; PSMF ¶ 18; DRPSMF ¶ 18.)

On December 22, 2008, Defendant notified Mr. West that Defendant took the position that Plaintiff did not have coverage for shoring, forming, and scaffolding work. (West Aff. ¶ 29.) Mr. West requested that scaffolding, shoring, and forming operations be retroactively added to the Policy. (Id.) Mr. West contends that he made that request in an abundance of caution. (Id.) Plaintiff did not expressly request coverage for those operations until after the Occurrence.

Plaintiff agrees that, if an operation was not listed as part of Plaintiff's estimated revenue on the Application, then Defendant would not have considered the operation when determining the estimated premium for Plaintiff. (DSMF ¶ 16; PRDSMF ¶ 16.) Plaintiff also agrees that consideration

of the premium was based on the listed operations. (DSMF ¶ 16; PRDSMF ¶ 16.) The Policy, however, provides that Defendant is entitled to conduct an audit of the operations performed by an insured at the end of the Policy period. (PSMF ¶ 26; DRPSMF ¶ 26.) Defendant ultimately advised Plaintiff that coverage for scaffolding, showing, and forming operations could not be added retroactively, or after a claim was known, but could be added effective December 22, 2008. (DSMF ¶ 16; PRDSMF ¶ 16.)

Plaintiff did not receive a complete copy of the Policy until after December 31, 2008. (West Aff. ¶ 23 & Ex. 5.) The cover letter for the Policy is dated December 31, 2008, and states, in relevant part:

> Please take the time to review the policy carefully and let us know if amendments are necessary.

You should pay particular attention to the liability schedule to verify that all classifications are correct. We must be notified of any class changes immediately as coverage applies only to scheduled operations per the Classification Limitation Endorsement.

(Id. Ex. 5 at 1.) The Policy contains a schedule of classifications as listed on the Application. (Id. at 5.) The Policy also contains a "Classification Limitation" endorsement, which states: "IT IS HEREBY UNDERSTOOD AND AGREED THAT COVERAGE AS PROVIDED BY THIS POLICY APPLIES ONLY TO THOSE OPERATIONS AS DESCRIBED UNDER THE LIABILITY SCHEDULE." (Id. at 9.)

Defendant contends that the Policy was not the first CGL policy that Defendant had issued to Plaintiff. (Decl. of Judith Ray ¶ 3; Supplemental Decl. of Judith Ray ¶ 3.)

According to Defendant, Plaintiff had been an insured of Defendant since November 2006. (Ray Decl. ¶ 4; Supp. Ray Decl. ¶ 4.) Defendant asserts that the two previous CGL policies issued to Plaintiff contained "substantially the same terms and provisions" as the Policy, and that both of the two previous policies contained the classification limitation endorsement. (Ray Decl. ¶¶ 5-6; Supp. Ray Decl. ¶¶ 5-6.)[2] Defendant contends that it delivered those

_____

[2]The cover letter for the policy covering the period from November 21, 2006, through November 21, 2007, stated, in relevant part:

> Please take the time to review the policy carefully and let us know if amendments are necessary. You should pay particular attention to the liability schedule to verify that all classifications are correct. We must be notified of any class changes immediately as coverage applies only to scheduled operations per the Classification Limitation Endorsement.

(Supp. Ray Decl. Ex. 1 at 1.) The policy contained a classification

AO 72A

previous policies to Plaintiff long before the Occurrence. (Ray Decl. ¶ 7; Supp. Ray Decl. ¶ 7.)

_____

limitation endorsement that provided; "IT IS HEREBY UNDERSTOOD AND AGREED THAT COVERAGE AS PROVIDED BY THIS POLICY APPLIES ONLY TO THOSE OPERATIONS AS DESCRIBED UNDER THE LIABILITY SCHEDULE." (Id. at 9 (capitalization in original).)

The cover letter for the policy covering the period from November 21, 2007, to November 21, 2008, stated, in relevant part:

> Please take the time to review the policy carefully and let us know if amendments are necessary. You should pay particular attention to the liability schedule to verify that all classifications are correct. We must be notified of any class changes immediately as coverage applies only to scheduled operations per the Classification Limitation Endorsement.

(Supp. Ray Decl. Ex. 2 at 1.) That policy also contained a Classification Limitation Endorsement that provided: "IT IS HEREBY UNDERSTOOD AND AGREED THAT COVERAGE AS PROVIDED BY THIS POLICY APPLIES ONLY TO THOSE OPERATIONS AS DESCRIBED UNDER THE LIABILITY SCHEDULE." (Id. at 9 (capitalization in original).)

Plaintiff, through counsel, sent a demand to Defendant, requesting that Defendant provide Plaintiff with a defense and indemnify Plaintiff against any and all claims arising out of the Occurrence. (PSMF ¶ 20; DRPSMF ¶ 20.) On May 13, 2009, Defendant informed Plaintiff, via letter, that it was denying coverage for any and all claims arising out of the Occurrence. (PSMF ¶ 22; DRPSMF ¶ 22.)

Nine lawsuits have been filed against Plaintiff that seek damages for injuries arising from the Occurrence. (PSMF ¶ 27; DRPSMF ¶ 27; West Aff. ¶ 32.) On June 2, 2010, the family and estate of Angel Chupin, who died as a result of the Occurrence, filed a lawsuit against Plaintiff in the State Court of Fulton County, Georgia. (PSMF ¶ 28; DRPSMF ¶ 28 (admitting PSMF ¶ 28, but denying it is material).)

AO 72A

Plaintiff has incurred attorneys' fees to defend itself from lawsuits and counterclaims asserted against it arising out of the Occurrence. (West Aff. ¶ 34.)

## 2. Procedural Background

On September 1, 2009, Plaintiff filed this lawsuit in the Superior Court of Paulding County, Georgia. (Docket Entry No. 1-2.) Plaintiff asserts a breach of contract claim arising under Georgia law, including a claim for bad faith damages under O.C.G.A. § 33-4-6, (Compl. ¶¶ 7-18), as well as a claim for attorneys' fees under O.C.G.A. § 13-6-11, (id. ¶¶ 19-20). On November 10, 2009, Defendant removed the case to this Court, citing the Court's diversity jurisdiction. (Docket Entry No. 1.)

AO 72A

On July 6, 2010, Defendant filed its Motion for Summary Judgment. (Docket Entry No. 33.) On that same day, Plaintiff filed its Motion for Summary Judgment. (Docket Entry No. 35.) The briefing processes for both Motions are complete, and the Court therefore concludes that the Motions are ripe for resolution by the Court.

**B.  Summary Judgment Standard**

Federal Rule of Civil Procedure 56(c) authorizes summary judgment when "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the initial burden of showing the Court that summary judgment is appropriate, and may satisfy this burden by pointing to materials in the

record. Reese v. Herbert, 527 F.3d 1253, 1269 (11th Cir. 2008) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)); Allen v. Bd. of Public Educ. for Bibb County, 495 F.3d 1306, 1313 (11th Cir. 2007). Once the moving party has supported its motion adequately, the non-movant has the burden of showing summary judgment is improper by coming forward with specific facts that demonstrate the existence of a genuine issue for trial. Allen, 495 F.3d at 1314.

When evaluating a motion for summary judgment, the Court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion. Optimum Techs., Inc. v. Henkel Consumer Adhesives, Inc., 496 F.3d 1231, 1241 (11th Cir. 2007). The Court also must

AO 72A

"'resolve all reasonable doubts about the facts in favor of the non-movant.'" Rioux v. City of Atlanta, Ga., 520 F.3d 1269, 1274 (11th Cir. 2008) (quoting United of Omaha Life Ins. Co. v. Sun Life Ins. Co. of Am., 894 F.2d 1555, 1558 (11th Cir. 1990)). Further, the Court may not make credibility determinations, weigh conflicting evidence to resolve disputed factual issues, or assess the quality of the evidence presented. Reese, 527 F.3d at 1271; Skop v. City of Atlanta, Ga., 485 F.3d 1130, 1140 (11th Cir. 2007). Finally, the Court does not make factual determinations. In re Celotex Corp., 487 F.3d at 1328.

The standard for a motion for summary judgment differs depending on whether the party moving for summary judgment also bears the burden of proof on the relevant

issue.  As the United States Court of Appeals for the Sixth Circuit has noted:

> "When the moving party does not have the burden of proof on the issue, he need show only that the opponent cannot sustain his burden at trial.  But where the moving party has the burden–the plaintiff on a claim for relief or the defendant on an affirmative defense–his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party."

Calderone v. United States, 799 F.2d 254, 259 (6th Cir. 1986) (quoting William W. Schwarzer, Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact, 99 F.R.D. 465, 487-88 (1984)).  "Where the movant also bears the burden of proof on the claims at trial, it 'must do more than put the issue into genuine doubt; indeed, [it] must remove genuine doubt from the issue altogether.'" Franklin v. Montgomery County, Md.,No. DKC

AO 72A

2005-0489, 2006 WL 2632298, at *5 (D. Md. Sept. 13, 2006) (quoting Hoover Color Corp. v. Bayer Corp., 199 F.3d 160, 164 (4th Cir. 1999)) (alteration in original).

### C. Defendant's Motion for Summary Judgment

Defendant has moved for summary judgment on Plaintiff's claims, arguing that the Policy does not provide coverage for the Occurrence. Defendant also seeks a declaration that the Policy does not provide coverage or a defense to Plaintiff for any claims arising out of the Occurrence.

"Insurance in Georgia is a matter of contract and the parties to the contract of insurance are bound by its plain and unambiguous terms." Hurst v. Grange Mutual Cas. Co., 266 Ga. 712, 716, 470 S.E.2d 659, 663 (1996). "[A]n

AO 72A

insurer may fix the terms of its policy as it wishes, insuring against certain risks and excluding others, provided the terms are not contrary to law." Id. The insurer, however, has the burden to define any exclusions from coverage clearly and distinctly. Id. The insurer also bears the burden of showing that the exclusion exists and is applicable. Nationwide Mut. Fire Ins. Co. v. Collins, 136 Ga. App. 671, 676, 222 S.E.2d 828, 831-32 (1975).

A court construing an insurance policy must attempt "to ascertain the intention of the parties by looking to the insurance contract as a whole." Ryan v. State Farm Mut. Auto. Ins. Co., 261 Ga. 869, 872, 413 S.E.2d 705, 707 (1992). A court first must take into consideration the ordinary and legal meaning of the words used in the policy.

Id. Thus, "[i]f the terms of an insurance contract are 'unambiguous, clear, and capable of only one reasonable construction, they must be taken in their plain, ordinary, and popular sense as may be supplied by common dictionaries.'" York Ins. Co. v. Williams Seafood of Albany, Inc., 223 F.3d 1253, 1254 (11th Cir. 2000) (quoting Lemieux v. Blue Cross & Blue Shield, 216 Ga. App. 230, 231, 453 S.E.2d 749, 751 (1994)). When construing an insurance policy, "'[t]he test is not what the insurer intended its words to mean, but what a reasonable person in the position of the insured would understand them to mean. The policy should be read as a layman would read it and not as it might be analyzed by an insurance expert or an attorney.'" Id. at 1254-55 (quoting United States Fire Ins. Co. v. Hilde, 172

34

Ga. App. 161, 163, 322 S.E.2d 285, 288 (1984)) (alteration in original).

If a provision of an insurance policy "is susceptible of two or more constructions, even when the multiple constructions are all logical and reasonable, it is ambiguous." <u>Hurst</u>, 266 Ga. at 716, 470 S.E.2d at 663. Moreover, an insurance policy is ambiguous if it "is confusing to a layman." <u>York Ins. Co.</u>, 233 F.3d at 1255. Under those circumstances, the Court must construe the policy strictly against the insurer, as the drafter, and in favor of the insured. <u>Hurst</u>, 266 Ga. at 716, 470 S.E.2d at 663. The Court, however, may not create an ambiguity by "'lifting a clause or portion of the contract out of context.'" <u>Titan Indem. Co. v. Hall County</u>, 202 Ga. App. 38, 39, 413 S.E.2d

35

213, 214 (1992) (quoting Cherokee Credit Life Ins. Co. v.

Baker, 119 Ga. App. 579, 583, 168 S.E.2d 171 (1969)).

"Exceptions and exclusions to coverage must be

construed strictly in favor of the insured and against the

insurer." Furgerson v. Cambridge Mut. Fire Ins. Co., 237

Ga. App. 637, 639, 516 S.E.2d 350, 352 (1999). If,

however, the policy language is "clear, explicit, and

unambiguous," the court must enforce the policy as written.

Ryan, 261 Ga. at 872, 413 S.E.2d at 707; Furgerson, 237

Ga. App. at 639, 516 S.E.2d at 352.[3]

---

[3]Defendant argues that the "known loss doctrine" should prohibit coverage from applying retroactively here. "[T]he known loss doctrine in common law insurance jurisprudence excludes coverage of a loss to the insured of which the insured had actual knowledge prior to the policy's effective date or knew was substantially certain to occur." Stonehenge Eng'g Corp. v. Employers Ins. of Wausau, 201 F.3d 296, 301-02 (4th Cir. 2000). That doctrine "seeks to prevent the concept of an insurable risk

36

For the following reasons, the Court finds that the Classification Limitation Exclusion applies here. The Classification Limitation Exclusion provides: "It is hereby understood and agreed that coverage as provided by this policy applies only to those operations as described under the liability schedule." (DSMF ¶ 3; PRDSMF ¶ 3 (admitting Policy contains this endorsement, but asserting it is not material).) The Court simply cannot find that this provision is ambiguous, as its plain terms provide that the Policy affords coverage only for claims that arise out of operations listed in the Policy. It is undisputed that Plaintiff failed to list

---

from becoming a mere fiction when the insured knows there is a substantial probability that it has suffered or will suffer a loss covered by the policy." Id. at 302. Plaintiff has indicated that it does not contend that retroactive coverage should apply here. The Court therefore need not, and does not, address this argument.

scaffolding and shoring operations on the Application for the Policy, and that Plaintiff's president affirmatively chose only to list Plaintiff's major revenue operations on the Application. It also is undisputed that the Application did not instruct applicants to differentiate between major and minor revenue operations. The Application, however, included a section directing applicants to list operations that applicants wished to exclude from coverage. Plaintiff's president listed three applications under that section, and understood that those applications would be excluded from coverage. Construing the Application as a whole, the Court simply cannot conclude that the Application's failure to provide

instructions to list <u>all</u> operations for coverage voids the Classification Limitation Endorsement.[4]

Additionally, before accepting the Policy, Plaintiff received a Proposal from Defendant that specifically stated: "**Classification Limitation Endorsement:** Limits coverage to specific classifications as indicated on the completed SIIC application." (West Aff. Ex. 3 at 2.) The Proposal listed the operations that Plaintiff listed on the Application in an untitled table. (<u>Id.</u> at 4.) The Court therefore finds that the

---

[4]The Court also cannot agree with Plaintiff that the Classification Limitation Endorsement is invalid because it "completely nullifies the coverage provided" by in the Policy. <u>See</u> <u>Hooters of Augusta, Inc. v. American Global Ins. Co.</u>, 272 F. Supp. 2d 1365, 1378 (S.D. Ga. 2003) (concluding that endorsement id not apply because policy granted coverage under one provision and excluded that coverage in endorsement), <u>aff'd</u>, 157 F. App'x 201 (11th Cir. 2005).

Classification Limitation Endorsement ordinarily would apply to this case.

Plaintiff, however, contends that the Classification Limitation Endorsement should not apply here because Defendant did not deliver the Policy to Plaintiff until after the Occurrence. An insured has an "obligation to read and examine [an] insurance policy to determine the extent of coverage." Danforth v. Government Employees Ins. Co., 282 Ga. App. 421, 430, 638 S.E.2d 852. 860 (2006). Under Georgia law, an insured "cannot be charged with a legal duty to read an endorsement [it] never received which changed [its] original policy upon renewal." Pennsylvania Millers Mut. Ins. Co. v. Dunlap, 153 Ga. App. 116, 118, 264 S.E.2d 483, 475 (1980). However, "[w]hen an insurance

AO 72A

company fails to mail or deliver the insurance policy to the insured within a reasonable amount of time after its issuance, the insurance company may still rely on exclusions contained in the policy of which 'the insured otherwise had notice.'" Williams v. Fallaize Ins. Agency, Inc., 220 Ga. App. 411, 414, 469 S.E.2d 752, 755-56 (1996) (quoting Investors Nat'l Life Ins. Co. v. Norsworthy, 160 Ga. App. 340, 341, 287 S.E.2d 66 (1981)).

The evidence in the record demonstrates that Plaintiff otherwise had notice of the Classification Limitation Exclusion. First, as previously discussed, the Proposal specifically stated: "**Classification Limitation Endorsement:** Limits coverage to specific classifications as indicated on the completed SIIC application." (West Aff. Ex.

41

3 at 2.)  The Proposal listed the operations that Plaintiff listed on the Application.  (<u>Id.</u> at 4.)  Second, on or about November 24, 2008, Defendant sent a copy of a temporary insurance contract (the "Binder") to Mr. West via electronic mail.  (PSMF ¶ 12; DRPSMF ¶ 12.)  The Binder contains the following statement: **"Classification Limitation Endorsement:** Limits coverage to specific classifications as indicated on the completed SIIC application." (West Aff. Ex. 4 at 1.)  Third, Plaintiff had two previous policies with Defendant that contained similar provisions and endorsements.  Plaintiff thus certainly had notice before the Occurrence that the Classification Limitation Endorsement or a substantially similar provision applied to this case, even if Defendant did not deliver the Policy to Plaintiff until after

the Occurrence. The Court therefore cannot conclude that the Classification Limitation Endorsement does not apply to Plaintiff based on an alleged lack of notice.

Plaintiff also apparently contends that the Unintentional Failure to Disclose Hazards provision applies to relieve Plaintiff from the effects of the Classification Limitation Endorsement. That provision states: "If unintentionally you should fail to disclose all hazards relating to the conduct of your business that exist at the inception date of Coverage Part, we shall not deny coverage under this Coverage Part because of such failure." (West Aff. Ex. 5 at 46.) The problem with this argument, however, is that Plaintiff's president affirmatively decided not to list scaffolding or shoring operations on the Application, even though

43

Plaintiff's president knew, when he completed the Application, that Plaintiff would perform those operations at the Project. Given that affirmative decision, Plaintiff cannot now contend that the Unintentional Failure to Disclose Hazards provision applies to this situation. Moreover, applying the Unintentional Failure to Disclose Hazards provision under the circumstances of this case would render the Classification Limitation Endorsement superfluous--a result that would be contrary to Georgia law governing interpretation of insurance contracts. See Isdoll v. Scottsdale Ins. Co., 219 Ga. App. 516, 518, 466 S.E.2d 48, 50 (1995) ("Every written provision of an insurance contract must be given its apparent meaning and effect.").

44

Similarly, Plaintiff cannot rely on the Policy's audit provision to avoid the effects of the Classification Limitation Endorsement. That provision permits Defendant to audit Plaintiff's revenues for operations and to adjust the premium for the Policy accordingly. Once again, however, Plaintiff's president consciously decided not to list scaffolding or shoring operations on the Application, even though he knew that Plaintiff would perform those operations at the Project. Given that conscious decision, Plaintiff cannot now contend that the audit provision applies to make the Classification Limitation Endorsement of no effect. In any event, applying the audit provision in that fashion would cause the Classification Limitation Endorsement to be of no effect, which would be contrary to Georgia law governing

45

interpretation of insurance contracts. Isdoll, 219 Ga. App. at 518, 466 S.E.2d at 50.

In sum, the Court concludes that, as a matter of law, the Classification Limitation Endorsement applies here. The Court further finds that, as a matter of law, the Policy does not provide coverage or a defense to Plaintiff for any claims arising from the Occurrence. The Court therefore grants Defendant's Motion for Summary Judgment.

## D. Plaintiff's Motion for Summary Judgment

Plaintiff has filed its own Motion for Summary Judgment, in which it requests that the Court: (1) grant summary judgment in Plaintiff's favor on its breach of contract claim; (2) grant summary judgment in Plaintiff's favor on its claim for attorneys' fees and expenses of

46

litigation under O.C.G.A. § 13-6-11; and (3) enter a declaratory judgment holding that Plaintiff is entitled to coverage under the Policy for all claims arising out of the Occurrence. The Court addresses those requests in turn.

### 1. Breach of Contract Claim

The evidence in the record, viewed in the light most favorable to Defendant, as the non-movant, indicates that the Application required Plaintiff to list all of its operations for which Plaintiff wanted coverage, and that the Application was not ambiguous. The evidence, viewed in the light most favorable to Defendant, also indicates that Plaintiff's president, Mr. West, consciously decided to list only Plaintiff's major revenue-producing operations on the Application, even though the Application did not contain

47

language instructing Mr. West to list only major revenue operations. The evidence, viewed in the light most favorable to Defendant, also demonstrates that, when Mr. West completed the Application, he knew that Plaintiff would provide scaffolding, shoring, and forming services at the Project, but that he did not list those operations on the Application.

The evidence further indicates that Plaintiff received both a Proposal and a Binder prior to the Occurrence that cautioned Plaintiff about the classification limitation endorsement and listed the revenue operations that Plaintiff had included on the Application. The evidence further shows that Plaintiff had obtained two previous policies from Defendant, both of which contained similar provisions,

48

including the classification limitation endorsement. A reasonable jury therefore could find that Plaintiff received adequate notice of the classification limitation endorsement before the Occurrence.

The Court also concludes that the classification limitation endorsement is not ambiguous, and that the endorsement specifically states that the Policy provides coverage only for those operations listed in the Application. Plaintiff clearly failed to list scaffolding, shoring, and forming on the Application as part of its operations for which it desired coverage under the Policy. Given that Plaintiff failed to list those operations on the Application, Plaintiff is not entitled to coverage under the Policy for the Occurrence, which arose from those operations.

AO 72A

Given the above circumstances, the Court simply cannot find that a reasonable jury could only find for Plaintiff on its breach of contract claim. The Court therefore denies this portion of Plaintiff's Motion for Summary Judgment.

### 2. Claim Under O.C.G.A. § 13-6-11

Plaintiff's Complaint includes two claims for attorneys' fees and expenses: a claim under O.C.G.A. § 13-6-11 and a claim for bad faith penalties under O.C.G.A. § 33-4-6. Plaintiff has moved for summary judgment in its favor on its claim for attorneys' fees and expenses under O.C.G.A. § 13-6-11.

Defendant argues that Plaintiff cannot recover attorneys' fees and expenses of litigation under both O.C.G.A. § 13-6-11 and O.C.G.A. § 33-4-6. The Court

previously has recognized that Georgia case law "clearly establishes that O.C.G.A. § 33-4-6 is the exclusive remedy for an insurer's bad faith refusal to pay insurance proceeds, and that claims for attorney's fees and litigation expenses under other Georgia statutes are not authorized." Adams v. Unum Life Ins. Co. of Am., 508 F. Supp. 2d 1302, 1318-19 (N.D. Ga. 2007) (collecting cases); see also United Servs. Auto. Ass'n v. Carroll, 226 Ga. App. 144, 148, 486 S.E.2d 613, 617 (1997) ("OCGA § 33-4-6 is the exclusive remedy for bad faith denial of benefits so that litigation expenses under OCGA § 13-6-11 are not recoverable."). The Court therefore finds that Plaintiff cannot recover attorneys' fees and expenses of litigation under O.C.G.A. § 13-6-11, because O.C.G.A. § 33-4-6 provides the exclusive avenue

51

for recovering attorneys' fees and expenses of litigation in an action involving an alleged breach of an insurance contract.[5]

Even if O.C.G.A. § 13-6-11 applied here, "'[a] bona fide dispute as to part of a claim precludes a finding of stubborn litigiousness.'" <u>Byers v. McGuire Props., Inc.</u>, 285 Ga. 530,

---

[5]Plaintiff relies upon <u>American Family Life Assurance Company v. United States Fire Company</u>, 885 F.2d 826 (11th Cir. 1989), to support its claim that it may recover under O.C.G.A. § 13-6-11 and O.C.G.A. § 33-4-6. The Court acknowledges that <u>American Family</u> expressly rejected an argument by the defendant insurers that O.C.G.A. § 33-4-6 provided "the exclusive avenue in Georgia for an award of attorneys' fees in disputes involving insurance contracts." 885 F.2d at 834 n.3. <u>American Family</u>, however, relied on cases that failed to consider the effect of <u>McCall v. Allstate Insurance Co.</u>, 251 Ga. 869, 310 S.E.2d 513 (1984), which concluded that O.C.G.A. § 33-4-6 is the exclusive manner in which an insured may recover expenses of litigation in an action for breach of an insurance contract. 251 Ga. at 871, 310 S.E.2d at 516. Under those circumstances, the Court simply cannot conclude that attorneys' fees under O.C.G.A. § 13-6-11 are available here.

540, 679 S.E.2d 1, 10 (2009) (quoting <u>Candler v. Wickes</u> <u>Lumber Co.</u>, 195 Ga. App. 239, 242, 393 S.E.2d 99, 102 (1990)). Moreover, "'[a]ttorney fees are not authorized under OCGA § 13-6-11 if the evidence shows that a genuine dispute exists-whether of law or fact, on liability or amount of damages, or on any comparable issue.'" <u>Nash v.</u> <u>Studdard</u>, 294 Ga. App. 845, 852, 670 S.E.2d 508, 515 (2008) (quoting <u>M&H Constr. Co. v. North Fulton Dev.</u> <u>Corp.</u>, 238 Ga. App. 713, 714, 519 S.E.2d 287, 289 (1999)). Finally, to recover bad faith damages, Plaintiff must show that Defendant's refusal to pay under the Policy "'is not prompted by an honest mistake as to one's rights or duties but [rather] by some interested or sinister motive.'" <u>Hooters</u> <u>of Augusta, Inc.</u>, 272 F. Supp. 2d at 1381 (quoting

53

*Freightliner Chattanooga, LLC v. Whitmire*, 262 Ga. App. 157, 162, 584 S.E.2d 724, 729 (2003)).

Here, for the reasons discussed *supra* Parts III.C. and D.1., at least a bona fide dispute existed as to whether Defendant was liable to Plaintiff under the terms of the Policy. Moreover, Plaintiff has adduced absolutely no evidence showing that Defendant's refusal to provide coverage to Plaintiff under the Policy was based on a sinister or improper motive. Consequently, Plaintiff could not recover attorneys' fees and expenses under O.C.G.A. § 13-6-11, even if that provision applied here.

For the reasons discussed above, Plaintiff cannot recover attorneys' fees and expenses of litigation under O.C.G.A. § 13-6-11. Moreover, because Plaintiff's breach

of contract claim fails, Plaintiff cannot maintain a claim for attorneys' fees and expenses of litigation under O.C.G.A. § 13-6-11. See M &H Constr. Co. v. North Fulton Dev. Corp., 238 Ga. App. 713, 715, 519 S.E.2d 287, 289 (1999) (noting that award of damages or relief on underlying claim is prerequisite to award of attorney fees under O.C.G.A. § 13-6-11); Gardner v. Kinney, 230 Ga. App. 771, 772, 498 S.E.2d 312, 313 (1998) (observing that O.C.G.A. § 13-6-11 is not separate cause of action, but simply establishes circumstances under which party can recover expenses of litigation as additional element of damages). The Court therefore denies Plaintiff's Motion for Summary Judgment

AO 72A

as to Plaintiff's claim under O.C.G.A. § 13-6-11, and

dismisses that claim.[6]

---

[6]Plaintiff did not move for summary judgment on its claim for bad faith penalties under O.C.G.A. § 33-4-6. For the following reasons, however, Plaintiff could not obtain summary judgment in its favor on that claim.

O.C.G.A. § 33-4-6(a) governs claims for bad faith penalties in cases alleging breaches of insurance contracts. O.C.G.A. § 33-4-6(a) provides, in relevant part:

> In the event of a loss which is covered by a policy of insurance and the refusal of the insurer to pay the same within 60 days after a demand has been made by the holder of the policy and a finding has been made that such refusal was in bad faith, the insurer shall be liable to pay such holder, in addition to the loss, not more than 50 percent of the liability of the insurer for the loss or $5,000.00, whichever is greater, and all reasonable attorney's fees for the prosecution of the action against the insurer.

O.C.G.A. § 33-4-6(a). "[T]o prevail on a claim for an insurer's bad faith, the insured must prove two conditions: (1) that a demand for payment was lodged against the insurer at least 60 days prior to filing suit and (2) that the insurer's failure to pay was motivated by bad faith." Primerica Life Ins. Co. v. Humfleet, 217 Ga. App. 770, 771, 458 S.E.2d 908, 910 (1995). The Court must construe O.C.G.A. § 33-4-6 strictly because the statute imposes a penalty. Id. at 771-72, 458 S.E.2d at 910.

Here, there is no dispute that Plaintiff made a demand to Defendant under O.C.G.A. § 33-4-6. Plaintiff thus has satisfied the first element of its claim for bad faith penalties under O.C.G.A. § 33-4-6.

A plaintiff asserting a claim under O.C.G.A. § 33-4-6, however, also must prove that the insurer made its refusal to pay the claim in bad faith. Southern Fire & Cas. Ins. Co. v. Northwest Ga. Bank, 209 Ga. App. 867, 868, 434 S.E.2d 729, 730 (1993). "'Penalties for bad faith are not authorized where the insurance company has any reasonable ground to contest the claim and where there is a disputed question of fact.'" Id. (quoting Fortson v. Cotton States Mut. Ins. Co., 168 Ga. App. 155, 158, 308 S.E.2d 382 (1983)); see also Homick v. Am. Cas. Co., 209 Ga. App. 156, 157, 433 S.E.2d 318, 318 (1993)) ("Georgia courts have consistently held that penalties for bad faith are not authorized where there is a disputed question of fact or doubtful question of law.").

The question of whether an insurer acted in bad faith ordinarily is for the jury. Homick, 209 Ga. App. at 157, 433 S.E.2d at 318 (citing Int'l Indem. Co. v. Collins, 258 Ga. 236, 238, 367 S.E.2d 786, 788 (1988)). However, "'when there is no evidence of unfounded reason for the nonpayment, or if the issue of liability is close, the court should disallow imposition of bad faith penalties.'" Id. (quoting Collins, 258 Ga. at 238, 367 S.E.2d 786).

Here, Defendant denied coverage to Plaintiff under the Policy based on the Classification Limitation Endorsement. Given the evidence in the record, the Court simply cannot find that Defendant had an unfounded reason for refusing to indemnify or defend Plaintiff under the Policy. At a minimum, the issue of liability is a close one. The Court consequently concludes that Plaintiff is not entitled to bad faith penalties under O.C.G.A. § 33-4-6, and

AO 72A

### 3. Declaratory Judgment Request

In its Motion for Summary Judgment, Plaintiff also requests that the Court enter a declaratory judgment holding that Plaintiff is entitled to coverage under the Policy for all claims arising out of the Occurrence. For two reasons, the Court must deny this request. First, Plaintiff's Complaint does not contain a declaratory judgment claim. Second, even if Plaintiff's Complaint contained such a claim, the

---

dismisses that claim. See Oak Road Dentistry, P.C. v. Provident Life & Acc. Ins. Co., 370 F. Supp. 2d 1317, 1327 (N.D. Ga. 2005) (concluding that dismissal of claim under O.C.G.A. § 33-4-6 was warranted where policy did not provide for coverage); see also State Farm Mut. Auto. Ins. Co. v. Johnson, 242 Ga. App. 591, 592, 530 S.E.2d 492, 494 (2000) (holding that no recovery for attorneys' fees under O.C.G.A. § 33-4-6 was possible where court had determined, as matter of law, that there was no liability under policy).

Court cannot enter a declaratory judgment holding that Plaintiff is entitled to coverage under the Policy for the reasons discussed <u>supra</u> Part II.D.1. Finally, to the extent that Plaintiff seeks summary judgment on Defendant's Counterclaim, which requests a declaration that the Policy does not provide coverage for the Occurrence, that request fails for the reasons discussed <u>supra</u> Part II.C. The Court therefore denies this portion of Plaintiff's Motion for Summary Judgment.

## III. Conclusion

ACCORDINGLY, the Court **GRANTS** Defendant's Motion for Summary Judgment [33], and **DECLARES** that Defendant has no obligation under the Policy to provide coverage or a defense to Plaintiff for any claims arising out

of the December 19, 2008, accident at the Atlanta Botanical Garden. The Court **DENIES** Plaintiff's Motion for Summary Judgment [35], and **DENIES** Plaintiff's Motion to Strike [50]. The Court **DISMISSES** Plaintiff's Complaint. The Court **DIRECTS** the Clerk to **CLOSE** this case. The Court further **DIRECTS** the Clerk: (1) to enter judgment against Plaintiff and in favor of Defendant on the claims contained in Plaintiff's Complaint; and (2) to enter judgment against Plaintiff and in favor of Defendant on Defendant's Counterclaim.

IT IS SO ORDERED, this the 16 day of September, 2010.

_____
UNITED STATES DISTRICT JUDGE

AO 72A